IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 3:13MJ137 (DJN) |
| | ) | |
| LARRY B. WILLIAMS, | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

Defendant Larry B. Williams seeks suppression of evidence obtained by the police from his vehicle after a traffic stop that followed Defendant's vehicle weaving in his lane to the extent that he touched and rode on the right fog line several times and briefly crossed the center line. Defendant challenges the validity of the stop, arguing that the police officer had no basis to initiate the stop, because mere contact without crossing the fog line does not support a charge for failure to maintain a lane of travel. For the reasons that follow, the Court finds that, based on the totality of the circumstances, the officer had reasonable suspicion to stop Defendant's vehicle for both Failure to Maintain a Single Lane of Traffic in violation of the Code of Virginia § 46.2-804 and Driving Under the Influence (DUI) in violation of the Code of Virginia § 18.2-266(ii).[1] Therefore, the Court DENIES Defendant's motion.

---

[1] Section 18.2-266(ii) prohibits a driver from operating his vehicle "while such person is under the influence of alcohol." Section 46.2-804 mandates, in relevant parts, that: "A vehicle shall be driven as nearly as is practicable entirely within a single lane and shall not be moved from that lane until the driver has ascertained that such movement can be made safely." Because the defendant's vehicle was stopped for these offenses within the jurisdiction of the Fort Lee military base, these state statutes are assimilated into federal offenses subject to the Court's jurisdiction.

I.   Factual Background

The Court conducted an evidentiary hearing on Defendant's motion on April 11, 2013. During the hearing, the arresting officer, Albert Purdy, testified as to the events leading up to the stop of Defendant's vehicle. Defendant called no witnesses and offered no evidence that contradicted Officer Purdy's description of the events. After hearing Officer Purdy's testimony and considering all of the evidence admitted during the hearing, the Court found Officer Purdy to be credible as to all aspects of his testimony. (Suppression Hearing Transcript "Tr." at 32.) Officer Purdy's testimony established the following facts.[2]

Officer Purdy serves as a patrolman with the Fort Lee Police Department, having roughly 12 years of prior law enforcement experience. (Tr. at 5-6.) After attending the military police academy, Officer Purdy received on-the-job training at Fort Bragg, Fort Meyer and in Korea. (Tr. at 6). He serves on the DUI driving interdiction team at Fort Lee. (Tr. at 6.) Officer Purdy has investigated approximately 20 other potential infractions for driving under the influence on Route 36 in Fort Lee, Virginia, where the driver exhibited a pattern of weaving and touching the fog lines.[3] (Tr. at 14-15.) In 18 of those cases, the driver was found to be intoxicated, while medical emergencies accounted for the other two. (Tr. at 14-15.)

On January 9, 2013, Officer Purdy was on duty and in an unmarked car travelling westbound on Route 36. (Tr. at 32, 45.) At the time of the incident, Officer Purdy's vehicle contained a dashboard-mounted video camera. (Tr. at 8.) However, the camera did not begin operating until shortly before Officer Purdy activated his lights; therefore, the resulting video of

---

[2]   At the conclusion of the hearing, the Court set forth its Findings of Fact. (Tr. at 32-36.) This factual background encompasses the Court's Findings of Fact.

[3]   During the suppression hearing, Officer Purdy repeatedly referred to the boundary lines for the roadway as "fog lines." The Court views "fog lines" and "boundary lines" as synonymous.

the incident (marked as Government's Exhibit 10) begins roughly a minute before the activation of the lights. (Tr. at 8-9, 21.) Thus, the video failed to capture Officer Purdy's initial observation of Defendant's vehicle driving over, but not crossing, the right fog line for approximately five feet. (Tr. at 8-9, 22.)

This incident began shortly after 9:00 p.m. on January 9, 2013, when Officer Purdy observed Defendant's vehicle approximately 75 feet in front of him. (Tr. at 32.) There was traffic trailing Defendant's vehicle in the left lane adjacent to Defendant's lane. (Tr. at 32.) Officer Purdy saw Defendant's vehicle driving over, but not crossing, the right fog line for approximately five feet. (Tr. at 8-9, 22.) Consequently, Officer Purdy began to pay closer attention to Defendant's vehicle. (Tr. at 9.) Even though Defendant drove his vehicle on top of the right fog line for several feet and Officer Purdy believed that he could have issued a citation to Defendant at that point for failing to maintain a single lane of traffic, Officer Purdy elected at that time not to stop Defendant, because the driver may have "sneezed, maybe he dropped something, something could happen in the vehicle where a little kid threw something up to the window and he swerved over. I give that a correction." (Tr. 18-19.) But then, after witnessing a pattern of Defendant's vehicle "weaving back and forth, and then finally touching [the fog line] again," Officer Purdy ultimately decided to stop Defendant's vehicle for failing to maintain a single lane of traffic and because Officer Purdy believed that Defendant was driving while impaired. (Tr. at 19.)

After initially observing Defendant's vehicle drive on top of the right fog line for roughly five feet, Officer Purdy then saw Defendant's vehicle swerve left to the center dotted line. (Tr. at 11.) Defendant's vehicle then moved right to the right fog line, but not over the line. (Tr. at 11.) Defendant's vehicle then swerved back to the center dotted line, then back to the middle and then

3

again to the right fog line. (Tr. at 11-12). Defendant's vehicle then again moved back towards the center dotted line and then back to the right fog line. (Tr. at 12.) During this time, Officer Purdy observed at least four people in the back seat of Defendant's vehicle, which raised additional safety concerns for the officer. (Tr. at 12.) The weaving of Defendant's vehicle also concerned the officer, because Defendant's vehicle could have come into contact with other vehicles in the left lane. (Tr. at 13.) Indeed, Officer Purdy testified that the video depicts Defendant's vehicle crossing the center line into the left lane on one occasion. (Tr. at 13.) The video also depicts other vehicles driving in the left lane, trailing behind Defendant's vehicle. (Tr. at 32; Gov't Ex. 10.) Notably, no adverse road or weather conditions existed at the time. (Tr. at 10, 14.)

In addition to Defendant having failed to his maintain his vehicle in a single lane and the safety issues raised by Defendant's driving, Officer Purdy believed that Defendant was driving while impaired from alcohol. (Tr. at 13-14.) For these reasons and based on his previous experience with similar cases, Officer Purdy stopped Defendant's vehicle. (Tr. at 14.) As previously noted, during twenty previous stops of vehicles that weaved back and forth, Officer Purdy found that all but two involved intoxicated drivers and the other situations involved drivers that required attention (one driver was trying to commit suicide in her vehicle and the other had a medical issue). (Tr. at 16-17.)

Officer Purdy also explained his understanding of the significance of the fog lines on each side of the highway. Officer Purdy believed that the fog lines are not part of the roadway and, instead, serve as warning devices to drivers. (Tr. at 18.) Thus, in Officer Purdy's view, a driver who drives on a fog line has failed to maintain his vehicle in his lane of travel. (Tr. at 18.) Therefore, Officer Purdy believed that Defendant violated that statute (failing to maintain a

4

single lane of travel) when Defendant initially drove on the right fog line for five feet. (Tr. at 18-19.)

Officer Purdy conceded that Defendant drove his vehicle within the speed limit, neither driving too fast or too slow. (Tr. at 24.) Officer Purdy further acknowledged that Defendant's vehicle never crossed over the right fog line on any occasion; instead, his vehicle merely touched the right fog line. (Tr. at 24.) The video also shows that Defendant's vehicle crossed the center dotted line on the left of Defendant's lane of travel; however, at the time of the stop, Officer Purdy did not see Defendant's vehicle actually cross the center line. (Tr. at 34-36.) Officer Purdy turned on his lights and stopped Defendant's vehicle, believing that Defendant was intoxicated and that he violated the statute for failure to maintain a single lane of traffic. (Tr. at 32-33.)

Ultimately, Defendant was charged with conspiracy to steal government property, theft of government property, illegal provision of alcohol to individual under 21, possession of marijuana and failure to maintain lane. (Criminal Information (ECF No. 1) at 2, 4-5). Defendant moves to suppress all statements and evidence obtained from the stop on the basis that Officer Purdy lacked reasonable suspicion to conduct a traffic stop of Defendant's vehicle. (Def.'s Mot. to Suppress (ECF No. 12) at 2.)[4]

II.  Analysis

Defendant's motion challenges whether Officer Purdy had reasonable suspicion that Defendant was engaged in criminal activity; specifically, whether Defendant failed to maintain a

---

[4]   In his motion, Defendant only challenged the validity of the stop, not the scope of the search after the stop occurred. (Tr. at 4; *see also United States v. Vaughan*, 700 F.3d 705, 709-10 (4th Cir. Nov. 29, 2012) (setting forth the two-step analysis for evaluating the propriety of a traffic stop)). Therefore, the hearing addressed only the validity of the stop and this Opinion will do the same.

single lane of travel under the Code of Virginia § 46.2-804 or whether Defendant was driving while under the influence of alcohol. Concluding that Officer Purdy had reasonable suspicion to stop Defendant's vehicle for both offenses, the Court finds that a lawful basis existed for stopping Defendant's vehicle.

A. General Principles Regarding Traffic Stops.

"Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning" of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809-10 (1996). "An automobile stop is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances. As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id.* at 810. However, probable cause is not "an indispensable component of reasonableness." *United States v. Rendon*, 607 F.3d 982, 989 (4th Cir. 2010) (quoting *Nat'l Treasury Emps. Union v. Von Raab*, 489 U.S. 656, 665 (1989)). Instead, "the police can stop and briefly detain a person for investigative purposes if they have a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if they lack probable cause under the Fourth Amendment." *United States v. Soklow*, 490 U.S. 1, 7 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). "Reasonable suspicion" is a less demanding standard than that for probable cause. *United States v. Powell*, 666 F.3d 180, 186 (4th Cir. 2011).

"Courts must employ a commonsense and contextual approach in evaluating the validity of an investigatory detention." *United States v. McBride*, 676 F.3d 385, 392 (4th Cir. 2012). That is so, because when assessing the reasonableness of the stop, courts "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a

'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). In determining whether an officer had reasonable suspicion, officers can "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *Id.* (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)) (internal quotation marks omitted). The Fourth Circuit has "emphasized that reasonable suspicion 'is not readily, or even usefully, reduced to a neat set of legal rules, but rather entails common sense, nontechnical conceptions that deal with factual and practical considerations of everyday life.'" *United States v. Mubdi*, 691 F.3d 334, 344 (4th Cir. 2012) (quoting *United States v. Mason*, 628 F.3d 123, 128 (4th Cir. 2010)). Additionally, the Court must "consider the totality of the circumstances and give due weight to common sense judgments reached by officers in light of their experience and training." *Id.* Indeed, "a police officer must simply point to 'specific and articulable fact which, taken together with rational inferences from those facts,' evince 'more than an inchoate and unparticularized suspicion or hunch of criminal activity.'" *United States v. Branch*, 537 F.3d 328, 336 (4th Cir. 2008) (quoting *Terry v. Ohio*, 392 U.S. 1, 21, 27 (1968)).

"Observing a traffic violation provides sufficient justification for a police officer to detain the offending vehicle for as long as it takes to perform the traditional incidents of a routine traffic stop." *Branch*, 537 F.3d at 335 (4th Cir. 2008); *see also id.* at 337 ("If a police officer observes a traffic violation, he is justified in stopping the vehicle for long enough to issue the driver a citation and determine that the driver is entitled to operate his vehicle.") And the Fourth Circuit has made clear that the reasonableness of an officer's action must be evaluated in context. As the Court explained in *Branch*, "context matters: actions that may appear innocuous at a certain time or in a certain place may very well serve as a harbinger of criminal activity under different

circumstances." *Id.* at 336. Further, a court must respect the training and expertise of police officers. *Id.* at 336-37 ("it is entirely appropriate for courts to credit 'the practical experience of officers who observe on a daily basis what transpires on the street.'") (quoting *United States v. Lender*, 985 F.2d 151, 154 (4th Cir. 1993)).

> Finally, the Court heeds the Supreme Court's repeated admonition that:
>
> Judges should be cautious about second-guessing a police officer's assessment, made on the scene, of the danger presented by a particular situation . . . . [W]e have instructed that reasonableness must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight and that the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving.

*Ryburn v. Huff*, 132 S. Ct. 987, 991-992 (2012) (internal citations and quotation marks omitted); *see also United States v. Taylor*, 624 F.3d 626, 634 (4th Cir. 2010) ("officers confronting potential emergencies such as this one 'need [to make] an on-the-spot judgment based on incomplete information and sometimes ambiguous facts bearing upon the potential for serious consequences.") (quoting *United States v. Martins*, 413 F.3d 139, 147 (1st Cir. 2005)); *Branch*, 537 F.3d at 337 ("*post hoc* judicial review of police action should not serve as a platform for 'unrealistic second-guessing' of law enforcement judgment calls.") And the Fourth Circuit has cautioned that "[i]t is important . . . in reviewing police conduct under the Fourth Amendment, not to lose the forest for the trees." *United States v. Taylor*, 857 F.2d 210, 215 (4th Cir. 1988). A reviewing court must employ a holistic evaluation of the facts that examines the "cumulative information available" to the police officer. *Branch*, 537 F.3d at 337 (quoting *Arvizu*, 534 U.S. at 273). That is so, because "it is a matter of common sense that a combination of events each of which is mundane when viewed in isolation may paint an alarming picture." *Huff*, 132 S. Ct. at 991.

B. Failure to Maintain a Single Lane of Travel

The Court must first determine whether Officer Purdy had reasonable suspicion to believe that Defendant violated § 46.2-804 of the Code of Virginia, which provides that "[a] vehicle shall be driven as nearly as is practicable entirely within a single lane." For the reasons that follow, the Court finds that Officer Purdy had cause to stop Defendant for this offense.

We begin with whether a driver violates § 46.2-804 by driving on a fog line, but does not cross it. Defendant asserts that "[s]imply touching a line does not support a charge for failure to maintain a lane of travel . . . ." (Def.'s Mot. at 2.) However, Defendant fails to provide any support for this proposition. Instead, Defendant merely cites to *Neal v. Commonwealth*, 27 Va. App. 233, 239, 498 S.E.2d 422, 425 (1998), for the proposition that "[a]n isolated instance of mild weaving within a lane is not sufficiently erratic to justify an investigatory stop." *Id.*; *see also Commonwealth v. Webb*, 56 Va. Cir. 419, 419, 2001 WL 34348396, at *1 (2001) (isolated instance of weaving insufficient to justify traffic stop). These cases, however, address whether reasonable suspicion exists to stop the driver for suspected driving while under the influence and fail to address the initial question in this case: whether reasonable suspicion exists to stop a vehicle for violating § 46.2-804 when a driver drives on a fog line. To answer this question, the Court must determine whether Defendant's assertion that a violation of § 46.2-804 requires a driver to cross a fog line, instead of merely driving on it.

We first turn to whether fog lines are part of a lane of traffic. During the suppression hearing, Officer Purdy credibly testified that he believes that a driver violates § 46.2-804 by driving on a fog line regardless of whether the driver actually crosses the line, because "the right fog line, the dotted white line, or left fog line, is not part of the roadway. It's actually a safety and warning to you, to the vehicles . . . . If a vehicle in the left lane and a vehicle in the right

9

lane both thought that that — that dotted line was part of the roadway, they could collide and they'd hit each other so everyone would be at fault. But that is not part of the roadway, and that is failure to maintain your lane of travel." (Tr. at 18.) Not only does this explanation from Officer Purdy make eminent sense, the defense offered no evidence that undermines this position.

Moreover, the statute at issue supports this view as it mandates that a "vehicle shall be driven as nearly as is practicable entirely *within* a single lane." Code of Virginia § 46.2-804 (emphasis added). The word "within" necessarily implies boundaries, which could only refer to fog lines, and, therefore, proper driving must occur "within" those lines — not on the lines.

Further, § 46.2-100 of the Code of Virginia defines "traffic lane" or "lane" as "that portion of a roadway designed or designated to accommodate the forward movement of a single line of vehicles." Code of Virginia § 46.2-100. A "roadway" consists of "that portion of a highway improved, designed, or ordinarily used for vehicular travel, exclusive of the shoulder. A highway may include two or more roadways if divided by a physical barrier or barriers or an unpaved area." *Id.* And the Code of Virginia defines a "highway" as:

> "Highway" means the entire width *between* the boundary lines of every way or place open to the use of the public for purposes of vehicular travel in the Commonwealth, including the streets and alleys, and for law-enforcement purposes, (i) the entire width *between* the boundary lines of all private roads or private streets that have been specifically designated "highways" by an ordinance adopted by the governing body of the county, city, or town in which such private roads or streets are located and (ii) the entire width *between* the boundary lines of every way or place used for purposes of vehicular travel on any property owned, leased, or controlled by the United States government and located in the Commonwealth.

Code of Virginia § 46.2-100 (emphasis added). Consequently, under the Code of Virginia, a lane of travel by definition constitutes the area *between* the boundary lines (the fog lines) on each

10

side of the lane. For these reasons, a driver who drives his vehicle on the boundary lines violates § 46.2-804, regardless of whether the driver actually crosses over the boundary lines.

Indeed, a district court in the District of New Mexico reached a similar conclusion when construing a statute for that state that contains language identical to that in the Virginia statute. *United States v. Bassols*, 775 F. Supp.2d 1293 (D. N. Mex. 2011). The Court in *Bassols* ultimately held:

> The word "lane" as used in the statute does not include the line or stripe that divides a lane of traffic from another lane or the line or stripe that separate a lane from the shoulder of the road. That is, the Court will apply a "bright line" standard that a driver who drives *on* the line or stripe dividing a lane of traffic from another lane or on the line or stripe that separates a lane from the shoulder has failed to drive "as nearly as practicable entirely within a single lane."

*Id.* at 1296 (emphasis in original). Echoing Officer Purdy, the court in *Bassols* explained:

> Because [] vehicles that are driving on the same line . . . might collide, construing the statute in the manner that [the defendant] advocates for would be contrary to the New Mexico legislature's intent of promoting roadway safety and would lead to the absurd result that two vehicles could each be entirely within a single, separate lane despite the fact that the vehicles are actually occupying the same physical space. . . . Further, given that the sides of most vehicles extend slightly beyond the outer edge of the tires, a vehicle that is driving with its tire on a lane marker even poses a risk to other vehicles that are not also driving on, but are close to the lane marker. . . . Because the lane ends at the point that the lane marker begins at the point that the lane marker begins, a driver who drives on a lane marker has necessarily failed to drive entirely within a single lane.

*Id.* at 1301. Finding no adverse road or weather conditions that caused the defendant to move onto the boundary line (which is also true here), the court in *Bassols* found that the officer in that case properly stopped the defendant's vehicle for failing to maintain a single lane of traffic. *Id.* at 1303. *See also United States v. Flores*, 368 Fed. Appx. 424, 430, 2010 WL 750080 at *5 (4th Cir. 2010) (unpublished) (swerving past right fog line violates North Carolina single lane statute and justifies stop of vehicle); *United States v. De La Fuente-Ramos*, 242 F.3d 391, 2000 WL 1717186 at *5 (10th Cir. 2000) (unpublished) (touching boundary on three occasions supports

11

stop of vehicle); *United States v. Sanchez-Perez*, 2010 WL 2520651 at *3-4 (D. Kan. 2010) (upholding stop for failing to maintain single lane of traffic where vehicle drove on the fog line three times); *but see United States v. Colin*, 314 F.3d 439, 444-45 (9th Cir. 2002) (single touching, but not crossing of boundary line insufficient to stop vehicle for a violation of California single lane statute).[5]

Putting aside the actual crossing of the center lane that was not observed by Officer Purdy but is depicted on the video of the incident, the officer witnessed Defendant's vehicle repeatedly weaving and driving on one of the fog lines on at least five occasions. The initial touching lasted for approximately five feet — far from a quick, isolated touching. And the touchings of the fog lines occurred as Defendant's vehicle weaved back and forth within the boundary lines. Consequently, Officer Purdy had an ample basis to stop Defendant's vehicle for violating § 46.2-804 of the Code of Virginia.

Even if Officer Purdy wrongly believed that the mere touching of a fog line violates § 46.2-804, the suppression of evidence would not be appropriate. As the Fourth Circuit recently made clear in *Mubdi*, an officer's honest belief that the facts that he observed constituted a traffic violation — even if his view was mistaken — does not warrant suppression as long as his belief was reasonable. *Mubdi*, 691 F.3d at 342; *see also United States v. Arias*, 213 Fed. Appx. 230, 2007 WL 86815 at *2 (4th Cir. 2007) (unpublished) (reasonable mistake of fact leading to traffic stop does not warrant suppression). That is true, as the Supreme Court has repeatedly instructed, because "the *sole* purpose of the exclusionary rule is to deter misconduct by law enforcement."

---

[5] Importantly, the Ninth Circuit in *Colin* began its analysis of the issue by noting that neither the California statute nor state case law defines "drive as nearly as practical entirely within a single lane." *Id.* at 444. As detailed above, that is not the case here, because the Virginia legislature has defined a "traffic lane" as that which exists *between* the boundary lines. For this reason alone, *Colin* does not apply here.

*Davis v. United States*, 131 S. Ct. 2419, 2432 (2011) (emphasis in original). And

> the deterrence benefits of exclusion vary with the culpability of the law enforcement conduct at issue. When the police exhibit 'deliberate,' 'reckless,' or 'grossly negligent' disregard for Fourth Amendment rights, the deterrent value exclusion is strong and tends to outweigh the resulting costs. But when the police act with an objectively reasonable good-faith belief that their conduct is lawful, or when their conduct involves only simple isolated negligence, the deterrence rationale loses much of its force, and exclusion cannot pay its way.

*Id.* at 2427-28 (internal citations and quotation marks omitted).

Here, the Court reached the same conclusion as Officer Purdy that driving on a fog line violates § 46.2-804 of the Code of Virginia after having the benefit of hindsight, legal research and a significant amount of time to ponder the issue — none of which was available to Officer Purdy, who had to make a judgment call in a matter of seconds to ensure that Defendant's weaving did not result in a collision with other vehicles that were approaching from the rear of Defendant's vehicle in the lane adjacent to that in which Defendant was traveling. *See Branch*, 537 F.3d at 339 (the "'reasonable suspicion' standard recognizes that police officers are trained to spot crimes as they occur, and that such determinations often require spur-of-the-moment, context dependent judgments based on less than probable cause.") And it bears remembering that Defendant did actually cross the left fog line — Officer Purdy simply did not realize it at the time of the stop. (Tr. at 13, 34-36.) This fact underscores the reasonableness of the officer's actions. In sum, this is not the type of police conduct that the exclusionary rule was designed to deter. *Davis*, 131 S. Ct. at 2429. Consequently, on this basis alone, Defendant's motion must fail.

C. Driving While Intoxicated

The Court also believes that Officer Purdy had a reasonable suspicion that Defendant was driving while under the influence of alcohol. "Generally, an officer's observation that a car is

13

weaving can justify a stop based on the officer's belief that the driver may be impaired." *Bassols*, 775 F. Supp.2d at 1303. Ample case law supports an officer stopping a vehicle that weaves back and forth as Defendant's vehicle did, while repeatedly touching the fog lines. *See United States v. Banks*, 162 F.3d 1156, 1998 WL 558757 at *1 (4th Cir. 1998) (unpublished) (finding a stop proper where vehicle "repeatedly drifted towards the right, coming close to crossing into the right lane, and then suddenly jerked back to the left."); *United States v. Sang*, 89 F.3d 831, 1996 WL 316479 (4th Cir. 1996) (unpublished) (reasonable suspicion existed based on vehicle's weaving); *United States v. Smith*, 35 F.3d 557, 1994 WL 445636 (4th Cir. 1994) (unpublished) (weaving and slower than normal speed provided reasonable suspicion for stop); *United States v. Graves*, 2011 WL 796791 at *3 (E.D. Va. 2011) (swerving and touching boundary lines provided a reasonable articulable suspicion for stop); *United States v. Gupta*, 2006 WL 6093874 at *4 (E.D. Va. 2006) (weaving within lane provided reasonable suspicion that defendant was driving while under the influence of alcohol); *Neal*, 27 Va. App. at 239, 498 S.E.2d at 425 (repeated weaving proper basis for stop); *Freeman v. Commonwealth*, 20 Va. App. 658, 661-62, 460 S.E.2d 261, 263 (1995) (slow speed and weaving by vehicle, coupled with officer's experience, provided reasonable suspicion for stop). Further, the stop here must be viewed within the context of Officer Purdy's significant experience that consisted of 20 prior traffic stops involving similar driving conduct that resulted in 18 arrests for driving while under the influence of alcohol and two other situations that necessitated the assistance of law enforcement. *See Branch*, 537 F.3d at 336-37 ("it is entirely appropriate for courts to credit 'the practical experience of officers who observe on a daily basis what transpires on the street.'") (quoting *Lender*, 985 F.2d at 154). Consequently, Officer Purdy possessed a reasonable suspicion to stop Defendant for driving under the influence as well.

III. Conclusion

For the reasons set forth above, Defendant's Motion to Suppress (ECF No. 6) is DENIED. An appropriate Order shall be issued consistent with this Opinion.

Let the Clerk file this Order electronically and notify all counsel accordingly.

                                               /s/
                                     David J. Novak
                                     United States Magistrate Judge

Richmond, Virginia
Dated: May 13, 2013